## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| **JAY HUMPHREY, WALTER TERRELL**, and **DEVIN ROBINSON,** on behalf of themselves and others similarly situated, | : : : : | |
| | : | Civil Action No. 1:25-cv-15108 |
| Plaintiffs, | : : | **Document Electronically Filed** |
| v. | : : | **JURY TRIAL DEMANDED** |
| **THE CAMPBELL'S COMPANY**; **PEPPERIDGE FARM INCORPORATED,** | : : : : | |
| Defendants. | : : | |

## PLAINTIFFS' FIRST AMENDED CLASS AND  COLLECTIVE ACTION COMPLAINT

Plaintiffs Jay Humphrey, Walter Terrell, and Devin Robinson ("Named Plaintiffs"), individually and on behalf of others similarly situated, file their First Amended Class and Collective Action Complaint against Defendants The Campbell's Company ("Campbell's Company") and Pepperidge Farm Incorporated ("Pepperidge") (collectively "Defendants") for failure to pay employees overtime wages, seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, as well as under the state laws of Pennsylvania, Illinois, and Connecticut. Named Plaintiffs' FLSA claims are brought as a collective

action pursuant to 29 U.S.C. § 216(b) and the Pennsylvania, Illinois and Connecticut claims are brought as class actions under Federal Rule of Civil Procedure 23. The following allegations are based on Named Plaintiffs' personal knowledge and are made on information and belief as to the acts of others. Named Plaintiffs, individually and on behalf of others similarly situated, hereby state as follows:

## I.   <u>JURISDICTION AND VENUE</u>

1.    This Court has subject matter jurisdiction over the claims of Plaintiffs and those similarly situated pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

2.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims, because those claims derive from a common nucleus of operative facts.

3.    Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendants reside in this District and are subject to personal jurisdiction in this District.

## II.   <u>PARTIES</u>

### A.   <u>Named Plaintiffs</u>

4.    Plaintiff Jay Humphrey is a resident of Pennsylvania, and worked for Defendants as an hourly, non-exempt production worker in Defendants' Denver, Pennsylvania facility between approximately December 2021 and July 2024.

5.    Plaintiff Walter Terrell is a resident of Illinois, and worked for

Defendants as an hourly, non-exempt production worker in Defendants' Downers Grove, Illinois facility between approximately July 2023 and June 2025.

6.    Plaintiff Devin Robinson is a resident of Connecticut, and worked for Defendants as an hourly, non-exempt production worker in Defendants' Bloomfield, Connecticut facility between approximately May 2023 and January 2024.

7.    Named Plaintiffs' Consent to Join forms were previously filed with the original Complaint.

### B.    **Defendants**

8.    Defendant Campbell's Company is a New Jersey corporation with its principal place of business in Camden, New Jersey. Campbell's Company's headquarters is located at 1 Campbell Place, Camden, New Jersey 08103-1701 ("Campbell's Company Corporate Headquarters").[1]

9.    Defendant Pepperidge Farm Incorporated is a wholly owned subsidiary of Campbell's Company, with its headquarters located in Camden, New Jersey at the Campbell's Company Corporate Headquarters.[2]

10.    Campbell's Company operates numerous facilities across the United

---

[1] *See Contact*, THE CAMPBELL'S CO., https://www.thecampbellscompany.com/contact/ (last visited Dec. 16, 2025).
[2] *See Campbell's to Close Pepperidge Farm HQ in Norwalk, Move Jobs to New Jersey*, NBC CONNECTICUT, https://www.nbcconnecticut.com/news/local/campbells-to-close-pepperidge-farm-hq-in-norwalk-move-jobs-to-new-jersey/2956939/ (last visited Dec. 16, 2025).

States.[3] Campbell's Company is a large food and drink manufacturer that produces various soups, snacks, meals, and other food and drink products.[4]

11.    At all relevant times, Defendants have been an "employer" or "joint employer" as the FLSA defines those terms due to their employment of Named Plaintiff and those similarly situated as described herein.

12.    Defendants form a "single employer" because they are part of a single integrated enterprise and/or a joint employer by jointly operating and providing services and maintaining interrelated operations, centralized control of labor relations, common management and common ownership, and financial control.

13.    In particular, Campbell's Company is a joint employer and/or a single integrated enterprise of several other Campbell's-related facilities and subsidiaries, which it in turn manages. Defendant Campbell's Company is a publicly-traded company and filed its annual 10-K form with the United States Securities and Exchange Commission, explicitly listing all of its current subsidiaries within the United States and globally.[5]

14.    Although Named Plaintiffs and similarly situated employees are paid

---

[3] *See Contact Us*, THE CAMPBELL'S CO., https://www.thecampbellscompany.com/contact/ (last visited Dec. 16, 2025)

[4] *Our Food*, THE CAMPBELL'S CO., https://www.thecampbellscompany.com/our-food/ (last visited Dec. 16, 2025).

[5] *See Form 10-K*, THE CAMPBELL'S CO., Ex. 21, https://investor.thecampbellscompany.com/node/22071/html (last visited Dec. 16, 2025)

by one of Campbell's Company's entities, such as Pepperidge, Campbell's Company is also an "employer" because it is the parent company that operates the single integrated enterprise or otherwise functions as a joint employer.

15.    In addition, the Campbell's Company listed job openings for Named Plaintiff and other similarly situated employees at facilities where Pepperidge paid employees and other Campbell's Company subsidiaries paid other production and manufacturing employees.[6]

16.    In the Campbell's Company's 10-K filed on September 19, 2024, it represents that it had "approximately 14,400 full-time and part-time employees."[7] In addition, the Campbell's Company lists its U.S. manufacturing facilities by reportable segment. The Campbell's Company reported that it maintained "Meals & Beverages" manufacturing locations in: (1) Dixon, California; (2) Stockton, California; (3) Bellvue, Colorado; (4) Maxton, North Carolina; (5) Napoleon, Ohio; (6) Tualatin, Oregon; (7) Austin, Texas; (8) Paris, Texas, and (9) Milwaukee, Wisconsin ("M&B Manufacturing Locations"). The Campbell's Company also lists its "Snacks" manufacturing locations in: (1) Goodyear, Arizona; (2) Bloomfield, Connecticut; (3) Lakeland, Florida; (4) Downers Grove, Illinois; (5) Jeffersonville,

---

[6] *See Careers*, THE CAMPBELL'S CO., https://careers.thecampbellscompany.com/jobs (last visited Dec. 16, 2025). The Campbell's Company allows the search to be filtered by Category. Production and manufacturing jobs are listed in the Category "Manufacturing Hourly."

[7]    *See    Form    10-K*,    THE    CAMPBELL'S    CO.,    pg.    6, https://investor.thecampbellscompany.com/node/22071/html (last visited Dec. 16, 2025).

Indiana; (6) Hyannis, Massachusetts; (7) Charlotte, North Carolina; (8) Ashland, Ohio; (9) Willard, Ohio; (10) Salem, Oregon; (11) Denver Pennsylvania; (12) Downingtown, Pennsylvania; (13) Hanover, Pennsylvania; (14) Richmond, Utah; (15) Beloit, Wisconsin; and (16) Franklin, Wisconsin ("Snacks Manufacturing Locations").[8]

17.     Upon information and belief, many, if not all, of the Snacks Manufacturing Locations are operated by the Campbell's Company and Pepperidge.

18.     At all relevant times, Defendants have determined those matters governing the essential terms and conditions of employment for Named Plaintiffs and similarly situated employees. In so doing, Defendants are responsible for the human resources decision-making processes, including material terms and conditions of employment and other human resource operations, for Named Plaintiffs and those similarly situated.

19.     The work performed by Named Plaintiffs and similarly situated employees benefited Defendants and directly or indirectly furthered their interests.

20.     At all relevant times, Defendants has or had direct or indirect control and authority over Named Plaintiffs' and other similarly situated employees' working conditions, including matters governing the essential terms and conditions

---

[8] *See Form 10-K*, THE CAMPBELL'S CO., pg. 17, https://investor.thecampbellscompany.com/node/22071/html (last visited Dec. 16, 2025).

of their employment. At all relevant times, Defendants have exercised that authority and control over Named Plaintiffs and other similarly situated employees.

21.     At all relevant times, Defendants have had the authority to hire and fire employees, supervise and control employees' work schedules and work conditions, determine the rate and method of pay, and/or maintain employee records.

22.     At all relevant times, Defendants have suffered or permitted Named Plaintiffs and other similarly situated employees to work. The work that Named Plaintiffs and other similarly situated employees performed was for Defendants' benefit.

23.     During all relevant times, Defendants maintained control, oversight, and direction over Named Plaintiffs and other similarly situated employees, including promulgating and enforcing policies affecting wages and overtime.

24.     Defendants operate and control an enterprise and employ employees engaged in commerce or the production of goods for commerce, or have had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce.

25.     Defendants have had an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

26.     Upon information and belief, Defendants have applied or caused to be applied substantially the same employment policies, practices, and procedures to all

employees, including policies, practices, and procedures relating to payment of and compliance with the FLSA, including overtime wages, timekeeping, maintenance of records, etc.

27.    The unlawful acts described herein were committed by Defendants and/or their officers, agents, employees, or representatives, including as alter egos of one another, while actively engaged in management of Defendants' businesses or affairs and with the authorization of Defendants.

28.    Based on information and belief, Defendants have been fully aware at all relevant times that they were legally required to comply with the wage and overtime laws of the United States.

## III.    FACTUAL ALLEGATIONS

29.    Campbell's Company produces soups, snack foods, meals, beverages, and other food and drink products at M&B Manufacturing Locations and Snacks Manufacturing Locations facilities across the United States.

30.    At all times relevant, Named Plaintiffs and other similarly situated production/manufacturing employees have been "employees" as defined in the FLSA.

31.    At times relevant, Named Plaintiffs and other similarly situated production/manufacturing employees have worked, or they were scheduled to work, 40 or more hours in one or more workweek(s).

32.     Products produced by the division of Campbell's under the Pepperidge Farm label include Goldfish crackers, varieties of bread, crackers, desserts, and several lines of cookies.[9]

33.     Defendants operate numerous production facilities and manufacturing plants across the United States.[10]

34.     Production facilities and manufacturing plants that produce products under the Pepperidge Farm label are located throughout the United States, including in Pennsylvania, Illinois, Connecticut, Florida, Utah, Ohio, and Georgia.

35.     Upon information and belief, the production facilities and manufacturing plants that produce products under the Pepperidge Farm label are the Snacks Manufacturing Locations.

36.     Named Plaintiffs bring this action on behalf of similarly situated production and manufacturing employees at the Snacks Manufacturing Locations where Pepperidge Farm products are manufactured.

37.     Defendants employ hourly, non-exempt production and manufacturing workers at their production facilities and manufacturing plants.

38.     At all times relevant, Named Plaintiffs and other similarly situated

---

[9] *Products*, Pepperidge Farm, https://www.pepperidgefarm.com/products/ (last visited Dec. 16, 2025)

[10] *See* THE CAMPBELL'S CO., https://careers.thecampbellcompany.com/us/en/our-manufacturing-distribution-centers (last visited Dec. 16, 2025).

production/manufacturing employees have been "employees" as defined in the FLSA.

39.    Named Plaintiffs and other similarly situated production/manufacturing employees have worked, or they were scheduled to work, forty (40) or more hours in one or more workweek(s).

40.    Named Plaintiffs and other similarly situated production/manufacturing employees were paid by Defendants on an hourly basis at an agreed hourly rate.

41.    Defendants agreed to pay Named Plaintiffs and other similarly situated production/manufacturing employees an hourly rate for the hours they work.

42.    Named Plaintiffs and other similarly situated production/manufacturing employees worked forty or more hours per week in at least one workweek during the applicable limitations periods.

43.    During their employment with Campbell, Named Plaintiffs and other similarly situated production/manufacturing employees were not paid for all overtime wages they earned because employees were not paid for all work time, including overtime.

44.    Named Plaintiffs and other similarly situated production/manufacturing employees have not been paid for time they work before their regularly scheduled shifts.

45.    Named Plaintiffs and other similarly situated production/manufacturing employees are required to arrive at Defendants' premises before the scheduled start

of their shift to don their uniform and personal protective equipment ("PPE") and engage in other pre-shift substantive work activities.

46.    Named Plaintiffs and other similarly situated production/manufacturing employees are required to swipe their badge to gain entry to Defendants' facilities.

47.    Donning their uniform and PPE is Named Plaintiffs and other similarly situated production/manufacturing employees' first integral and indispensable job duty of the day, as they are working with food products in an industrial setting that requires adherence to Food and Drug Administration ("FDA") regulations and Good Manufacturing Practices ("GMPs"). Donning sanitary uniforms and PPE to maintain sanitary/hygienic conditions and comply with FDA regulations are inextricably intertwined with the job duties of manufacturing and packaging Defendants' food and beverage products.

48.    Additionally, after donning PPE, Named Plaintiffs and other similarly situated production/manufacturing employees are required to walk a distance on Defendants' premises to clock in and report for the start of their shifts.

49.    Moreover, at the end of their shifts, Named Plaintiffs and other similarly situated production/manufacturing employees were required to walk from the production line to doff their PPE and then exit the facility.

50.    In addition, on information and belief, Defendants maintained an unlawful policy or practice of rounding its production/manufacturing employees'

hours worked down in Defendants' favor or otherwise reducing employees' total hours worked.

51.    Named Plaintiffs and other similarly situated production/manufacturing employees are not compensated for all work after donning their PPE, until doffing their PPE, and/or for when they are required to be on Defendants' premises. This unpaid time is not captured because it occurs before clocking in, occurs after clocking out, and/or, on information and belief, Defendants systematically round employees' hours worked to their detriment.

52.    Defendants' failure to compensate Named Plaintiffs and other similarly situated production/manufacturing employees, as set forth above, has resulted in unpaid overtime.

53.    Named Plaintiffs and other similarly situated production/manufacturing employees typically worked forty hours per week. Named Plaintiffs and other similarly situated production/manufacturing employees performed unpaid pre- and post-shift work during workweeks when they performed 40 or more hours of work. Consequently,    Named    Plaintiffs    and    other    similarly    situated production/manufacturing employees did not receive all overtime wages they earned due to the practices and policies alleged above in such workweeks where they performed 40 or more hours of work.

54.    Plaintiff Jay Humphrey was typically scheduled to work more than 48

hours per workweek. In addition to working during his scheduled shifts, Plaintiff Jay Humphrey performed unpaid pre- and post-shift work during the workweeks that he worked more than 40 hours.

55.     Plaintiff Walter Terrell was generally scheduled to work from 10:00 p.m. to 6:00 a.m. six days per week. In addition to working during his scheduled shifts, Plaintiff Walter Terrell performed unpaid pre- and post-shift work during the workweeks that he worked more than 40 hours.

56.     Plaintiff Devin Robinson was typically scheduled to work from 2:00 p.m. to 1:00 p.m. six days per week. In addition to working during his scheduled shifts, Plaintiff Devin Robinson performed unpaid pre- and post-shift work during the workweeks that he worked more than 40 hours.

57.     Defendants' policies and practices, as alleged herein, have denied Named Plaintiffs and those similarly situated production/manufacturing employees overtime compensation.

58.     Defendants had actual or constructive knowledge that it was not compensating Named Plaintiffs and other similarly situated production/manufacturing employees for all hours worked.

59.     Defendants acted willfully regarding its conduct described herein.

60.     The FLSA requires Defendants to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. §

211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7.

61.    For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period, and date of payment and pay period covered by the payment. See 29 C.F.R. § 516.2.

62.    Defendants failed to track, keep, or transmit the hours accurately worked each day by Named Plaintiffs and other similarly situated production/manufacturing employees.

63.    Defendants willfully transmitted inaccurate and/or incomplete records to payroll for compensation purposes, which do not include all work performed, which had the direct effect of reducing Defendants' labor costs to the detriment of Named Plaintiffs and other similarly situated production/manufacturing employees.

64.    Thus, Defendants willfully did not record and pay all hours worked in violation of the FLSA and violated the FLSA's recordkeeping requirements

## IV.    <u>FLSA COLLECTIVE ACTION ALLEGATIONS</u>

65.    Named Plaintiffs bring their FLSA claims pursuant to 29 U.S.C. § 216(b) as a representative action on behalf of themselves and all other similarly

situated production/manufacturing employees of the opt-in collective, consisting of the following:

> All current and former hourly production/manufacturing employees of Defendants at Campbell's Company's Snacks Manufacturing Locations[11] who were paid for forty (40) or more hours of work in any workweek beginning August 29, 2022 and continuing through the final disposition of this case (hereinafter the "FLSA Collective" or the "Potential FLSA Collective Members").[12]

66.     This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA. In addition to Named Plaintiffs, numerous current and former hourly production/manufacturing employees are similarly situated regarding their claims for unpaid wages and damages. Named Plaintiffs are similarly situated to the FLSA Collective and acting on behalf of their interests as well as their own in bringing this action.

67.     These similarly situated production/manufacturing employees are known to Defendants and are readily identifiable through Defendants' records. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b) to collectively adjudicate their claims for unpaid overtime

---

[11] Named Plaintiffs' proposed collective includes only those production/manufacturing employees at Snacks Manufacturing Locations where Pepperidge Farm products are manufactured.

[12] Named Plaintiffs reserve the right to amend their definition of whom they seek to send Court-authorized notice based upon further investigation and discovery.

compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

## V.    <u>CLASS ACTION ALLEGATIONS</u>

68.    Plaintiff Humphrey brings Counts II and III of this lawsuit (for violation of the PMWA and PWPCL) as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All current and former hourly production/manufacturing employees of Defendants in any workweek in Pennsylvania beginning August 29, 2022 and continuing through the final disposition of this case (hereinafter the "Pennsylvania Class Members").

69.    Plaintiff Terrell brings Counts IV and V of this lawsuit (for violation of the IMWL and IWPCA) as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All current and former hourly production/manufacturing employees of Defendants in Illinois in any workweek beginning August 29, 2022 (for the IMWL claim) and August 29, 2015 (for the IWPCL claim) and continuing through the final disposition of this case (hereinafter the "Illinois Class Members").

70.    Plaintiff Robinson brings Counts VI and VII of this lawsuit for violation of the CMWL as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All current and former hourly production/manufacturing employees of Defendants in any workweek in Connecticut beginning August 29, 2023 and continuing through the final disposition of this case (hereinafter the "Connecticut Class Members").

71.    The Pennsylvania Class, Illinois Class, and Connecticut Class are together referred to as the "State Law Classes" and members of the State Law

Classes are "State Law Class Members."

72.    The Collective and the State Law Classes, are together referred to as the "Collective and Class" and the members of the Collective and Class are "Collective and Class Members" or "Production Workers."

73.    Plaintiffs reserve the right to redefine the Classes prior to notice or class certification, and thereafter, as may be warranted or necessary.

74.    The members of each Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 50 members in each Class.

75.    Defendants engaged in the same conduct toward Plaintiffs and the other members of the State Law Classes.

76.    The injuries and damages to each Class present questions of law and fact that are common to each member within such Class, and that are common to each Class as a whole.

77.    Plaintiffs will fairly and adequately represent and protect the interests of the State Law Classes. There is no conflict between the claims of Plaintiffs and those of the State Law Classes.

78.    Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

79.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact predominate over any individual questions in this matter. The common issue of facts and law, include but are not limited to: (1) whether Defendants paid the members of the State Law Classes for all time worked; and (2) whether Defendants failed to pay those workers the full amount of overtime compensation earned.

80.    Plaintiffs' claims are typical of the claims of the respective State Law Classes to which they belong. Those Plaintiffs' claims are typical of the claims of the State Law Classes in the following ways, without limitation: (a) Plaintiffs are members of the State Law Classes; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the State Law Classes; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the State Law Classes and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the State Law Classes; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the State Law Classes.

81.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and

expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The State Law Classes are readily identifiable from Defendants' own employment records. Prosecution of separate actions by individual members of the State Law Classes would create the risk of inconsistent or varying adjudications with respect to the individual members in each Class that would establish incompatible standards of conduct for Defendants.

82.    A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the State Law Classes, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

83.    Plaintiffs envision no difficulty in the management of this action as a class action.

## VI.    CAUSES OF ACTION

### COUNT I:
### FLSA – COLLECTIVE ACTION FOR UNPAID OVERTIME

84.    All of the preceding paragraphs are realleged as if fully rewritten herein.

85.    This claim is brought as part of a collective action by Named Plaintiffs on behalf of themselves and the FLSA Collective.

86.    The FLSA requires that employees receive overtime compensation for hours worked in excess of forty (40) per workweek. 29 U.S.C. § 207(a)(1).

87.    During the three (3) years preceding the filing of the lawsuit, Defendants employed, jointly employed, and/or were alter egos employing Named Plaintiffs and the Potential FLSA Collective Members.

88.    Named Plaintiffs and the Potential FLSA Collective Members regularly worked in excess of forty (40) hours in various workweeks.

89.    Defendants violated the FLSA with respect to Named Plaintiffs and the FLSA Collective by failing to compensate them overtime wages for all overtime hours worked because of Defendants' policies and/or practices described above.

90.    Named Plaintiffs and the Potential FLSA Collective Members were not exempt from receiving FLSA overtime benefits.

91.    Defendants knew or should have known of the FLSA's overtime payment requirements. Despite such knowledge, Defendants willfully withheld and failed to pay the overtime compensation to which Named Plaintiffs and the Potential FLSA Collective Members are entitled.

92.    The exact total compensation, including overtime, that Defendants have failed to pay Named Plaintiffs and the Potential FLSA Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in Defendants' possession or were otherwise not kept.

93.    As a direct and proximate result of Defendants' conduct, Named Plaintiffs and the Potential FLSA Collective Members have suffered and continue to suffer damages. Named Plaintiffs seek unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available on behalf of themselves and the Potential FLSA Collective Members.

**COUNT II:**
**PENNSYLVANIA MINIMUM WAGE ACT ("PMWA")**
**CLASS ACTION**
**(PLAINTIFF HUMPHREY)**

94.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

95.    At all relevant times, Defendants were employers, joint employers, and/or alter egos within the meaning of the PMWA.

96.    At all relevant times, Plaintiff Humphrey and the Pennsylvania Class Members were "employees" within the meaning of the PMWA.

97.    The PMWA requires that employees receive overtime compensation "not less than one and one-half times" their regular rate of pay for all hours worked over 40 in a workweek. 43 P.S. § 333.104(c). Such compensable time includes, *inter alia*, all "time during which an employee is required to be on the premises of the employer," *id.*, and must be paid 'regardless of whether the employee is actually performing job-related duties while on the premises, *Heimbach v. Amazon.com, Inc.*, 255 A.3 191, 204 (Pa. 2021).

21

98.    Defendants violated the PMWA by failing to pay Plaintiff Humphrey and the Pennsylvania Class members overtime wages for all overtime hours worked because of Defendants' policies and/or practices described above.

99.    For their failure to pay wages in conformance with the PMWA, Defendants are liable to Plaintiff Humphrey and the Pennsylvania Class for, inter alia, unpaid wages (including overtime wages) for three years prior to the filing of the lawsuit, prejudgment interest, and reasonable attorneys' fees and costs.

**COUNT III:**
**PENNSYLVANIA WAGE PAYMENT COLLECTION LAW ("PWPCL")**
**CLASS ACTION**
**(PLAINTIFF HUMPHREY)**

100.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

101.    At all relevant times, Defendants were employers, joint employers, and/or alter egos within the meaning of the PWPCL.

102.    At all relevant times, Plaintiff Humphrey and the Pennsylvania Class Members were "employees" within the meaning of the PWPCL.

103.    The PWPCL requires that employers pay all promised wages due to employees on regularly scheduled paydays.

104.    Defendants violated the PWPCL by failing to pay Plaintiff Humphrey and the Pennsylvania Class members promised wages due because of Defendants' policies and/or practices described above.

105.    Defendants' conduct in failing to pay Plaintiff Humphrey and the Pennsylvania Class members for all hours worked was willful and not based on any good faith dispute.

106.    For their failure to pay promised wages in conformance with the PWPCL, Defendants are liable to Plaintiff Humphrey and the Pennsylvania Class for, inter alia, unpaid wages (including overtime wages) for three years prior to the filing of the lawsuit, statutory penalties, prejudgment interest, and reasonable attorneys' fees and costs.

## COUNT IV:
## ILLINOIS MINIMUM WAGE LAW ("IMWL")
## CLASS ACTION
## (PLAINTIFF TERRELL)

107.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

108.    Defendants are subject to the IMWL's overtime requirements because each is an employer, joint employer, and/or alter ego under 820 Ill. Comp. Stat § 105/3(c).

109.    During all relevant times, Plaintiff Terrell and the Illinois Class were covered employees entitled to the above-described IMWL protections. See 820 Ill. Comp. Stat. § 105/3(d).

110.    The IMWL entitles covered employees to overtime compensation of not less than one and one-half (1½) times the employee's regular rate of pay for all

hours worked in excess of forty (40) in one workweek. See 820 Ill. Comp. Stat § 105/4a(1).

111.   Under Illinois law, "hours worked" includes "all time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code § 210.110.

112.   Defendants violated the IMWL by failing to pay Plaintiff Terrell and the Illinois Class members overtime wages due because of Defendants' policies and/or practices described above.

113.   Defendants' failure to pay compensation due to Plaintiff Terrell and the Illinois Class has been willful and/or in bad faith.

114.   Defendants knowingly failed to compensate Plaintiff Terrell and the Illinois Class for all hours worked and hours worked in excess of forty (40) hours in a workweek, in violation of the IMWL. See 820 Ill. Comp. Stat. § 105/4a(1).

115.   For their failure to pay wages in conformance with the IMWL, Defendants are liable to Plaintiff Terrell and the Illinois Class for, inter alia, unpaid wages for three years prior to the filing of the lawsuit, damages in the amount of five percent (5%) per month of the amount of underpayment, and reasonable attorneys' fees and costs. 820 Ill. Comp. Stat. § 105/12(a).

## <u>COUNT V:</u>
## ILLINOIS WAGE PAYMENT COLLECTION ACT ("IWPCA")

## CLASS ACTION
## (PLAINTIFF TERRELL)

116.  Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

117.  Plaintiff Terrell and the Illinois Class are employees for purposes of the IWPCA. See 820 Ill. Comp. Stat. § 115/2.

118.  Defendants are employers, joint employers, and/or alter egos for purposes of the IWPCA. See 820 Ill. Comp. Stat. § 115/2.

119.  The IWPCA requires employers to pay employees within 13 days after the end of a semi-monthly or bi-weekly pay period or within seven days after a weekly pay period in full at the lawful rate. See 820 Ill. Comp. Stat. § 115/4.

120.  If an employer fails to pay an employee all wages earned by the statutory deadline, the employee may commence a civil action to recover the amount of any underpayment and damages in the amount of two percent (2%) of each underpayment compounded monthly, plus costs and reasonable attorneys' fees. See 820 Ill. Comp. Stat. § 115/14.

121.  Pursuant to 735 Ill. Comp. Stat. § 5/13-206, the statute of limitations applicable to the IWPCA is ten years after accrual of the cause of action.

122.  Defendants' policies and practices in failing to compensate Plaintiff Terrell and the Illinois Class for hours worked in excess of 40 in a week at one-and-one-half times their regular rate violates the IWPCA.

25

123.   As a direct and proximate result of this practice, Plaintiff Terrell and the Illinois Class suffered loss of income and other damages to be determined at trial.

124.   Plaintiff Terrell and the Illinois Class are entitled to the underpayment, damages in the amount of two percent (2%) compounded monthly, and reasonable attorneys' fees and costs. See 820 Ill. Comp. Stat. § 115/14.

**COUNT VI:**
**CONNECTICUT MINIMUM WAGE ACT ("CMWA")**
**CONN. GEN. STAT. §§ 31-60 AND 31-76 CLASS ACTION**
**(PLAINTIFF ROBINSON)**

125.   Plaintiff Robinson incorporates by reference the foregoing allegations as if fully set forth herein.

126.   At all relevant times, Defendants were employers, joint employers, and/or alter egos within the meaning of the CWMA. *See* Conn. Gen. Stat. § 31-58(d).

127.   At all relevant times, Plaintiff Robinson and the Connecticut Class Members were "employees" within the meaning of the CMWA. *See* Conn. Gen. Stat. § 31-58(e).

128.   The CMWA requires that employees receive overtime compensation for all hours worked over 40 in a workweek. *See* Conn. Gen. Stat. §§ 31-76b(1)-2(A). Such compensable time includes, *inter alia*, all "time during which an employee is required to be on the premises of the employer." Conn. Gen. Stat. § 31-76b(2)(A); Conn. Agencies Regs., § 31-60-11; *Anderson v. Mt. Clemens Pottery Co.*,

328 U.S. 680, 690-91 (1946) (holding compensable time spent walking from timeclocks to work benches).

129.   Defendants violated the CMWA by failing to pay Plaintiff Robinson and the Connecticut Class members overtime wages for overtime wages for all overtime hours worked because of Defendants' policies and/or practices described above.

130.   For their failure to pay wages in conformance with the CMWA, Defendants are liable to Plaintiff Robinson and the Connecticut Class for, *inter alia*, unpaid wages (including overtime wages), damages in the amount of twice the unpaid overtime wages earned and due at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per week, with costs and such reasonable attorney's fees as may be allowed by the Court, as provided by the CMWA, Conn. Gen. Stat. § 31-68(a)(1).

## <u>COUNT VII</u>:
## CONNECTICUT MINIMUM WAGE ACT ("CMWA")
## CONN. GEN. STAT. §§ 31-71b and 31-71c CLASS ACTION
## (PLAINTIFF ROBINSON)

131.   Plaintiff Robinson incorporates by reference the foregoing allegations as if fully set forth herein.

132.   At all relevant times, Defendants were employers, joint employers, and/or alter egos within the meaning of the CMWA. *See* Conn. Gen. Stat. § 31-71a(1).

133.  At all relevant times, Plaintiff Robinson and the Connecticut Class Members were "employees" within the meaning of the CMWA. *See* Conn. Gen. Stat. § 31-71a(2).

134.  At all relevant times, Plaintiff Robinson and the Connecticut Class Members were entitled to wages within the meaning of the CMWA. *See* Conn. Gen. Stat. § 31-71a(3).

135.  Defendants knowingly issued paychecks to Plaintiff Robinson and the Connecticut Class Members that did not include "all wages due" for each week worked, as required by the CMWA, Conn. Gen. Stat. § 31-71b, because Defendants knew or should have known that Plaintiff Robinson and the Connecticut Class Members were working more hours than for which they were paid.

136.  As a result, Defendants knowingly, intentionally, and in bad faith failed to pay "all wages due" at the time of discharge or voluntary termination to Plaintiff Robinson and the Connecticut Class Members, in violation of the CMWA, Conn. Gen. Stat. § 31-71c.

137.  For their failure to pay wages in conformance with the CMWA, Defendants are liable to Plaintiff Robinson and the Connecticut Class for, *inter alia*, unpaid wages (including overtime wages), in the amount of twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, as provided by the CMWA, Conn. Gen. Stat. § 31-72.

## VII.  **PRAYER FOR RELIEF**

**WHEREFORE**, Named Plaintiffs request judgment against Defendants and for an Order:

A.    An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b), on behalf of the Collective;

B.    An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the State Law Classes;

C.    For unpaid wages as may be owed and prejudgment interest to the fullest extent permitted under the law;

D.    Liquidated damages and penalties to the fullest extent permitted under the law;

E.    Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

F.    Such other and further relief as this Court deems just and proper.

### **JURY DEMAND**

Named Plaintiffs request a trial by a jury.

Date: December 16, 2025                 Respectfully submitted,

*/s/ Krysten Connon*
Krysten Connon, NJ Bar No. 016732012
Sarah Schalman-Bergen, PA Bar No. 206211*
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116
Direct: (267) 256-9973
Telephone: (617) 994-5800
kconnon@llrlaw.com
ssb@llrlaw.com

29

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (OH Bar 0085586)*
Adam C. Gedling (OH Bar 0085256)*
Tristan T. Akers (OH Bar 0102298)*
**COFFMAN LEGAL, LLC**
1550 Old Henderson Rd
Suite #126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
  agedling@mcoffmanlegal.com
  takers@mcoffmanlegal.com

*Attorneys for Named Plaintiff and those similarly situated*

*\*Admitted pro hac vice*