[Docket No. 49]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

JAY HUMPHREY, WALTER TERRELL, and DEVIN ROBINSON, *individually and on behalf of others similarly situated*,

Plaintiffs,

v.

THE CAMPBELL'S COMPANY and PEPPERIDGE FARM INCORPORATED,

Defendants.

No. 25-CV-15108 (RMB) (MJS)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge**

In this wage and hour litigation, Plaintiffs Jay Humphrey, Walter Terrell, and Devin Robinson ("Named Plaintiffs") allege they worked more than forty hours a week and their employers, Defendants the Campbell's Company and Pepperidge Farm Incorporated, failed to pay them overtime. Named Plaintiffs prepare packaged food products at Pepperidge Farm's facilities and allege they are not compensated for time spent "donning" and "doffing"—putting on and taking off—personal protective equipment ("PPE") before starting and after ending their shifts. As a result, Named Plaintiffs claim they and other employees at facilities in Pennsylvania, Illinois, and Connecticut worked over forty hours a week without receiving overtime compensation. From that premise, Named Plaintiffs bring claims under the Fair

Labor Standards Act ("FLSA") for unpaid overtime and those three states' minimum wage and wage recovery laws.

Before the Court is Defendants' Motion to Dismiss Named Plaintiffs' second amended complaint ("SAC"). [Docket No. 49.] For the reasons discussed herein, the Court denies Defendants' motion at the pleading stage.

## I. FACTUAL BACKGROUND

Named Plaintiffs are hourly workers for Pepperidge Farm, a wholly owned subsidiary of Campbell's. [Docket No. 45 ¶ 13.] Pepperidge Farm manufactures various well-known food products such as Goldfish Snack Crackers, Milano Cookies, and loaved breads like white, wheat, and rye. [*See, e.g.*, *id.* ¶ 13.] Campbell's also produces food products under its own label, most notably canned soups—although it is unclear if those products are produced by Campbell's directly or by another subsidiary entity. [*See, e.g.*, *id.* ¶ 14.]

Each Named Plaintiff worked in one of three facilities that produce food products under the Pepperidge Farm label. Humphrey worked at the Denver, Pennsylvania food processing plant as a General Bakeshop helper from December 2021 to July 2024. [*Id.* ¶ 4.] Terrell was a Machine Operator at Defendants' Downers Grove, Illinois facility from July 2023 to June 2025, [*id.* ¶ 5], and Robinson was an Oven Operator at Defendants' Bloomfield, Connecticut facility from May 2023 to January 2024. [*Id.* ¶ 6].

Named Plaintiffs allege they were not paid for the time they spent beginning and ending their shifts. They claim Defendants required employees to arrive at work early to put on PPE the FDA required employees to wear when manufacturing food products. [*Id.* ¶ 54.] After donning their PPE, Named Plaintiffs then walked an unspecified distance to the portion of the facility where they clock in and perform their essential job duties. [*Id.* ¶ 55.] At the conclusion of their shift, the employees clocked out and re-tread the unspecified distance to "doff" their PPE. [*Id.* ¶ 56.] Notably, Named Plaintiffs do not allege how long it takes to don or doff their PPE, or describe their PPE other than to call it a "sanitary uniform." [*Id.* ¶ 54.]

Named Plaintiffs claim this uncompensated donning, doffing, and walking time increased the amount of hours they worked to over forty hours a week, and Defendants did not pay them for that time. [*Id.* ¶ 58.] They also claim Defendants improperly round employees' hours down from the hours actually worked, creating a windfall for Defendants. [*Id.* ¶ 57.] To date, four FLSA "Opt-in" Plaintiffs have also joined the suit (the Opt-in Plaintiffs and Named Plaintiffs collectively being the "Plaintiffs"). [*Id.* ¶¶ 8–11.]

## II. PROCEDURAL BACKGROUND

Named Plaintiffs initiated this action by filing their original complaint on August 29, 2025. [Docket No. 1.] Defendants requested a pre-motion conference to obtain leave to file a Rule 12 motion pursuant to this Court's individual policies and procedures on October 28. [Docket No. 14.] Plaintiffs responded on November 11.

[Docket No. 26.] The Court adjourned the first pre-motion conference pursuant to a letter from Plaintiffs' counsel informing the Court they were on the cusp of filing an amended complaint. [Docket Nos. 27–28.]

Plaintiffs' first amended complaint followed on December 22, [Docket No. 29], and Defendants again requested a pre-motion conference in advance of filing a motion to dismiss, [Docket No. 35]. The Court held that conference on January 13, 2026, [Docket No. 42], and Plaintiffs' now operative SAC followed on January 27, [Docket No. 45]. The SAC brings the following claims:

1) Unpaid overtime under the FLSA;

2) Unpaid overtime under the Pennsylvania Minimum Wage Act ("PMWA");

3) Unpaid wages under the Pennsylvania Wage Payment Collection Law ("PWPCL");

4) Unpaid overtime under the Illinois Minimum Wage Law ("IMWL");

5) Unpaid wages under the Illinois Wage Payment Collection Act ("IWPCA");

6) Unpaid overtime under the Connecticut Minimum Wage Act ("CMWA"); and

7) Unpaid wages under Section 31-72 of Connecticut's general statutes, which the parties refer to as Connecticut's Wage Payment Law ("CWPL").

After granting leave for Defendants to file a Rule 12 motion without another pre-motion conference, [Docket No. 48], Defendants filed the motion to dismiss that

is now pending before the Court, [Docket No. 49]. Plaintiffs opposed, [Docket No. 53], Defendants replied, [Docket No. 54], and the matter is now ripe for disposition.

## III. JURISDICTION

The FLSA is a federal statute, and this Court has subject-matter jurisdiction to hear Plaintiffs' FLSA claims under 28 U.S.C. § 1331. The Court exercises supplemental jurisdiction over Plaintiffs' state law claims because they arise from the same common nucleus of operative facts as their FLSA claims—Defendants' employment practices at certain Pennsylvania, Illinois, and Connecticut facilities. 28 U.S.C. § 1367. Defendants do not challenge personal jurisdiction or venue in this Court. [*See generally* Docket No. 49.]

## IV. LEGAL STANDARD

Courts must dismiss claims "upon which [no] relief can be granted." FED. R. CIV. P. 12(b)(6). Assessing whether "relief may be granted" employs the familiar *Iqbal / Twombly* factual plausibility standard: A complaint must contain sufficient ***factual*** material to ***plausibly*** meet the elements of a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs need not plead detailed factual allegations, but they ***must provide more than labels and conclusions***: "[A] formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing id.*). Courts must take all facts in the light most favorable to the plaintiff, *i.e.*, accept factual allegations in the complaint as true as well as all reasonable inferences

that can be drawn from them. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790–91 (3d Cir. 2016). But courts may freely disregard a plaintiff's legal conclusions. *Id.*

A Rule 12(b)(6) motion challenges the sufficiency of a plaintiff's claims, not their ultimate success. Instead of determining "whether a plaintiff will ultimately prevail[,]" *Twombly*, 550 U.S. at 563 n.8 (citation modified) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), these motions ask if a plaintiff's claims are plausible, thus entitling "the claimant [] to offer evidence to support the claims," *id.* Plausibility is a meaningfully higher standard than mere conceivability. *See id.* at 546 ("The 'no set of facts' [standard] is best forgotten as an incomplete, negative gloss[.]"). "It is not akin to probability, but it asks for more than sheer possibility. Where a complaint pleads facts that are merely consistent with defendant's liability, it stops short of plausibility." *Iqbal*, 556 U.S. at 679 (citation modified); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

To that end, this Court follows the three-step process set down by the Third Circuit in 2011 to evaluate claims at the motion to dismiss stage:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (*quoting Iqbal*, 556 U.S. at 664, 675, 679 (alterations in original)).

## V. DISCUSSION

The Court denies Defendants' motion at the pleading stage. Plaintiffs posit just enough factual material to plausibly allege Campbell's is a joint employer with Pepperidge Farm under Rule 12's lenient pleading standard. Plaintiffs satisfactorily state an FLSA claim for now too. All three Named Plaintiffs either plead (1) a particular week in which they worked forty hours or more or (2) that they were typically scheduled to work forty hours a week. And they plead that they must don, doff, and walk without pay each workday. Because they state an FLSA claim, Plaintiffs also state overtime claims under PMWA, IMWL, and CMWA because those state law claims share an analysis with their FLSA counterpart. Looking at the facts in the light most favorable to Plaintiffs, the Court draws sufficient inferences to allow Plaintiffs' state law wage collection claims to proceed, although each clears Rule 12's low bar for slightly different reasons. Finally, the Court denies Defendants' request to strike the collective and class claims at the pleading stage. The claims here are not ***so*** deficient that a collective or class could never be certified.

### A. Plaintiffs allege enough factual material to plausibly allege a joint employer relationship between Campbell's and Pepperidge Farm.

Campbell's moves to be dismissed because it claims it does not employ any of the Named Plaintiffs; instead, it claims Pepperidge Farm does. [Docket No. 49.] Named Plaintiffs argue that under the FLSA—which uses one of the broadest definitions of employer possible, *In re Enter. Rent-A-Car Wage & Hour Emp. Prac. Litig.*, 683 F.3d 462, 467 (3d Cir. 2012)—Campbell's and Pepperidge Farm are joint

employers. [Docket No. 53 at 8.] Named Plaintiffs allege enough facts to keep Campbell's in the case for now.

When assessing whether a joint employer relationship exists, district courts in the Third Circuit consider the following factors:

> (1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 149 (3d Cir. 2014) (citing *Enterprise*, 683 F.3d at 469); *Federman v. Bank of Am., N.A.*, 2014 WL 12774688, at *6 (D.N.J. Dec. 16, 2014). Named Plaintiffs allege, among other things, that Campbell's and Pepperidge Farm both employed Named Plaintiffs at shared facilities; jointly exercised authority and control of Named Plaintiffs; maintained interrelated operations; had direct involvement in hiring and firing employees, including Campbell's posting of multiple job listings for the same facilities where Named Plaintiffs worked; had control over Named Plaintiffs' working conditions, including setting wages; and controlled working schedules and conditions. [Docket No. 53 at 10–11 (citing Docket No. 45 ¶¶ 12–27).]

Although the allegations do not venture into many of the specifics regarding how Campbell's and Pepperidge Farm perform these operations jointly, Plaintiffs

allege the presence of enough of the *Enterprise* / *Thompson* factors to survive a motion to dismiss. The plaintiff in *Federman* similarly survived a Rule 12 motion with fewer allegations. There, plaintiff alleged that the defendants jointly "exercised power over hiring him, controlled his wages and hours, promulgated work assignments, and maintained certain employment records for Plaintiff, including a record of his time." 2014 WL 12774688, at *6. Named Plaintiffs' allegations here—taken as true—similarly state both Campbell's and Pepperidge Farm may be responsible for Named Plaintiffs' wages. And they include descriptions of Campbell's online job postings for positions at Pepperidge Farm facilities. Discovery may alter the calculus if those postings are the most interrelated action Defendants took, but for now, Named Plaintiffs have met the ***threshold*** showing of plausibility required at the pleading stage. *Thompson*, 748 F.3d at 149 ("It may well be that a fully developed factual record will preclude a finding that [defendants] were joint employers[.]").

**B. Named Plaintiffs make out an FLSA claim for unpaid overtime.**

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified[.]" *Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). With limited exceptions that are inapplicable here, the FLSA requires employers to pay their employees a minimum hourly wage for work performed. 29 U.S.C. § 206(a). To prevail on an FLSA claim, a plaintiff must show: "(1) he was an employee of the defendant; (2) the defendant was engaged in commerce; and (3) the defendant failed

to pay the federal minimum wage or overtime compensation for hours worked in excess of forty in a given week." *Morales v. Aqua Pazza LLC*, 2022 WL 1718050, at *3 (D.N.J. May 27, 2022) (citations and internal quotation marks omitted).

At the pleading stage, "a plaintiff must sufficiently allege [forty] hours of work in a ***given*** workweek ***as well as*** some uncompensated time in excess of the [forty] hours." *Davis*, 765 F.3d at 241–42 (internal quotation marks omitted) (alterations and emphasis in original) (quoting *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). But a plaintiff need not plead specific dates and times; allegations that a plaintiff "typically" worked a forty-hour week for which she was paid ***and also*** worked unpaid, extra hours beyond forty during ***those same weeks*** are sufficient at the pleading stage. *Id.*; *Boone v. Solid Wood Cabinet Co., LLC*, 2018 WL 2455924, at *3 (D.N.J. June 1, 2018) (allegation of a 50–60-hour workweek for fixed $600 a week sufficiently alleged FLSA overtime claim); *Ajanel v. JC HVAC LLC*, 2025 WL 1671318, at *3 (D.N.J. June 12, 2025) ("The Plaintiff alleges that he worked 'from 7:00am until between 5:00pm and 8:00pm' five days per week, which led to him working more than forty hours 'virtually every week.' . . . That is enough [to sustain an FLSA claim]." (internal citations omitted)). And only named plaintiffs—not opt-in plaintiffs—must make the showing of uncompensated hours over forty in any given week. *Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 566 (E.D. Pa. 2017) ("The distinction between 'named plaintiffs' and 'opt-in' plaintiffs is crucial here because only 'named plaintiffs' have a duty to plead plausible claims.").

Defendants do not quibble over whether they employed Named Plaintiffs or engaged in commerce. ***Crucially***, they also do not argue the limited donning, doffing, and walking time Plaintiffs complain of ***is not*** compensable. Instead, they argue Named Plaintiffs failed to point to a "given" week in which they worked over forty hours and were not paid overtime. [Docket No. 49 at 24, 27.] That argument misses the mark.

If donning and doffing time is added to an employee's already forty-hour workweek, and that time is compensable, then necessarily that employee worked more than forty hours. Humphrey and Robinson allege "typically" working forty-plus-hour weeks in addition to spending an unspecified amount of time off the clock putting on a "sanitary uniform." [Docket No. 45 ¶¶ 54, 61, 63.] Terrell alleges a specific week, May 18–May 24, 2025, during which he worked just over fifty-one hours, and similarly was not compensated for donning and doffing (although he was compensated for the other eleven hours of overtime worked that week). [*Id.* ¶ 62.] And all three Named Plaintiffs allege they ***must*** don and doff their PPE every single workday. [*Id.* ¶ 54.]

That mandatory and daily nature of donning and doffing PPE distinguishes Named Plaintiffs' claims here from the cases Defendants cite. In *Ford-Greene v. NHS, Inc.*, for example, the plaintiff claimed her overtime activities included phone calls, emails, travel, document review, attending trainings, and other ***sporadic*** and ***untraceable*** activities. 106 F. Supp. 3d 590, 610–11 (E.D. Pa. 2015). There was no guarantee, based on the plaintiff's allegations, that she performed those activities for

over forty hours in any given week because she could not trace which weeks she performed those activities—despite "typically" working forty hours. And, unlike here, the plaintiff in *Ford-Greene* never distinguished between her regular job activities and the activities she performed as overtime; instead she simply alleged she worked more hours than NHS documented. *Id.* at 610.

Unlike *Ford-Greene*, the Court here can trace a path from specific uncompensated work performed ***every day***—donning, doffing, and walking—to a "typical" week in which Plaintiffs already worked forty hours. Plaintiffs allege (and the Court must take as true) that Plaintiffs generally worked forty hours or more a week performing their regular job duties, food manufacturing and preparation. Plaintiffs then spent more than forty hours a week at work because they performed the distinct donning, doffing, and walking activities that are ***always*** required on top of their regularly scheduled shift. In other words, Named Plaintiffs functionally claim donning and doffing pushed them over forty hours every week, not just a "given" week. "That is enough" at the motion to dismiss stage. *Ajanel*, 2025 WL 1671318, at *3.

### C. Because Defendants concede the analysis for Plaintiffs' PMWA, IMWL, and CMWA claims mirrors the analysis for their FLSA claim, those claims also survive Defendants' motion.

Defendants concede "[c]ourts generally evaluate Pennsylvania, Illinois, and Connecticut overtime claims in the same manner as the FLSA." [Docket No. 49 at 10 n.6.] The Court agrees. *Alers v. City of Phila.*, 919 F. Supp. 2d 528, 560 (E.D. Pa. 2013) ("The PMWA parallels the FLSA in requiring employers to compensate employees

for overtime hours worked, and has an identical standard of liability as the FLSA in overtime violation claims."); *Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1074 (N.D. Ill. 2005) ("The IMWL parallels the FLSA, and thus the same analysis applies to claims made under the IMWL and FLSA."); *Kinkhead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 180 (D. Conn. 2020) ("The CMWA prescribes wage and overtime guarantees similar to the FLSA. Like the FLSA, the CMWA requires employers to compensate non-exempt employees at one and one-half times the regular rate for any work over 40 hours a week." (internal citations omitted)). Because the Court can trace a path from allegedly uncompensated work to weeks in which Plaintiffs claim to work over forty hours for their FLSA overtime claims, so too can the Court for Plaintiffs' PMWA, IMWL, and CMWA claims.

### D. Plaintiffs state claims under PWPCL, IWPCA, and CWPL.

Named Plaintiffs each bring a claim under their home state's wage collection law. Defendants argue these claims must fail because all three states' wage collection laws require an employment contract or agreement to demonstrate an entitlement to wages. [Docket No. 49 at 27.] Plaintiffs respond that state minimum wage violations can serve as the basis for wage collection law claims by demonstrating an implied agreement, *i.e.*, Named Plaintiffs agreed to work specified hours for ***at least*** minimum wage, and Defendants did not pay it. [Docket No. 53 at 37–39.] Because the cases interpreting each state's statute differ somewhat in their nuances, the Court discusses each claim separately. But ultimately, the Court finds that at the pleading stage,

Named Plaintiffs allege enough facts for the Court to plausibly glean an implied agreement to work for Defendants. Much like the joint employer issue, discovery may demonstrate no such agreement existed.

1. *Humphrey plausibly alleges an implied agreement to work for Defendants, but not because the PMWA can form the basis of a PWPCL claim.*

At first blush, the PWPCL appears to require a contract entitling an employee to wages. *Trainer v. W. Penn Allegheny Health Sys., Inc.*, 743 F. Supp. 3d 664, 669 (W.D. Pa. 2024) (citing *Rosario*, 247 F. Supp. 3d at 569) ("A [P]WPCL claim necessarily requires the existence of a contract."). Named Plaintiffs point to a case from the Pennsylvania Superior Court that held unpaid wages that form the basis of a PMWA claim may also serve as the basis for a PWPCL claim—even absent a contract. *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 969 (Pa. Super. Ct. 2009) ("Since the averments of appellants' complaint indicate that certain wages may still be owed to appellants under the PMWA, we find that appellants could also enforce their right to those wages under the WPCL."). But substantial case law supports the PWPCL's contract requirement in spite of *Lugo*. *See, e.g.*, *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa. Super. Ct. 2011) ("[A]bsent a formal employment contract or collective bargaining agreement, an employee raising a PWPCL claim would have to establish, at a minimum, an implied oral contract between the employee and employer.") (collecting cases); *Evans v. Capital Blue Cross*, 269 A.3d 569, 572 (Pa. Super. Ct. 2022); *Mason v. Phila. Parking Auth.*, 239 A.3d 1143 (Table), 2020 WL 4641646, at *4 (Pa. Commw. Ct. Aug. 12, 2020).

Federal courts in Pennsylvania have ruled both ways regarding whether PMWA violations serve as an "implied contract," and the cases do not resolve the paradox. *See, e.g.*, *Trainer*, 743 F. Supp. 3d at 669 ("[P]WPCL claim can only exist where such is based on an underlying contract."); *Drummond v. Herr Foods, Inc.*, 2014 WL 80729, at *3 (E.D. Pa. Jan. 9, 2014) (granting motion to dismiss PWPCL claims premised on PMWA violations ***and noting*** "Admittedly, the Pennsylvania Superior Court has provided both sides with support for their respective positions."); *Hively v. Allis-Chalmers Energy, Inc.*, 2013 WL 2557629, at *2 (W.D. Pa. June 10, 2013) (collecting cases allowing claims to proceed under *Lugo* without a contract). And the Superior Court itself recently noted in another context that it cannot overrule *Lugo*, and *Lugo* remains good law in the Commonwealth. *Bonds v. GMS Mine Repair & Maintenance, Inc.*, 245 A.3d 1102 (Table), 2020 WL 7663844, at *8 (Pa. Super. Ct. Dec. 24, 2020). Until the Pennsylvania Supreme Court intercedes, the confusion is likely here to stay.

The Court need not resolve the disagreement in Pennsylvania law, as the Court can infer an implied agreement from the few facts Humphrey alleges about his employment. *Braun*, 24 A.3d at 954 (citing *De Ascencio v. Tyson Foods*, 342 F.3d 301, 309 (3d Cir. 2003)). "[A]n implied oral contract between the employee and employer" satisfies the PWPCL's contract requirement. *Id.*; *De Ascencio*, 342 F.3d at 309. Here, Humphrey alleges he and other Pennsylvania employees agreed to work for Defendants for a certain wage, and Defendants allowed them to continue working at

their Denver, Pennsylvania facility for that wage. Drawing reasonable inferences from those facts, the Court concludes an implied oral contract ***may*** have existed between Humphrey and Defendants.

2. *Terrell's IWPCL claim survives under Illinois's generous definition of an employment agreement.*

Illinois's case law is more straightforward. Under the IWPCL, "the term employment agreement . . . is construed broadly and reaches far beyond a contract." *Cates v. Alliance Coal, LLC*, 2022 WL 4782857, at *5 (S.D. Ill. Oct. 3, 2022) (citing *Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1058 (Ill. App. Ct. 2005)). An agreement to perform work in exchange for compensation is all that is required. *Id.* That includes a bare agreement to follow the law—including the provisions of the IMWL. *Snell-Jones v. Hertz Corp.*, 2020 WL 1233825, at *5 (N.D. Ill. Mar. 13, 2020) ("[N]othing prevents an employer and an employee from mutually assenting to follow the law." (internal quotation marks omitted)) (quoting *Balmes v. Ill. Bell Tel. Co.*, 2016 WL 1019764, at *7 (N.D. Ill. Mar. 15, 2016)).

Terrell plausibly alleges the minimum "bare agreement to follow the law" by agreeing to work for Defendants for minimum wage and overtime rates guaranteed by federal and state law. The allegations here mirror those in *Cates*. Plaintiffs there alleged they agreed to work for an agreed hourly rate, that they were non-exempt from overtime provisions, and defendants did not pay for all the time worked. 2022 WL 4782857, at *6. The Southern District of Illinois found those minimal allegations sufficiently plead an agreement and a claim under the IWPCL. Terrell alleges he

agreed to work for Defendants, Defendants permitted him to continue working, and they failed to pay him overtime that dipped his wages below the amount required by the IMWL. Under the IWPCL's generous scope, Terrell's allegations of a "bare agreement to follow the law" suffice.

3. *Although it is a close call, Robinson alleges sufficient factual material to allege a CWPL claim.*

Like Pennsylvania, Connecticut requires a contract entitling a plaintiff to wages. Section 31-72 "creates no substantive rights beyond those provided by [] contractual agreements with defendants." *Zeyer v. Bd. of Ed.*, 98 F. Supp. 3d 425, 440 (D. Conn. 2015). A claim brought under that section "requires an employee to show that the employer breached an obligation to pay wages that arises from an employer-employee agreement." *Karavish v. Ceridian Corp.*, 2011 WL 3924182, at *15 (D. Conn. Sep. 7, 2011). Also like Pennsylvania, Connecticut recognizes implied contracts for wages. *State v. Town of Westport*, 2018 WL 5733522, at *2 (Conn. Super. Ct. Oct. 15, 2018).

Robinson cites a case in which a lone allegation of an agreement to pay an hourly rate for hours worked was sufficient to state a Section 31-72 claim. *Del Rio v. Amazon.com Servs., LLC*, 2022 WL 4599036, at *4 (D. Conn. Sep. 30, 2022). Comparing that in-state precedent to the facts here, and looking at them in the light most favorable to Robinson, he makes similar allegations that survive Defendants' challenge. Robinson does not allege an explicit agreement, but he alleges he was Defendants' employee and that they controlled his wages. [Docket No. 45 ¶¶ 6, 26.] It is a close call, but at the pleading stage, the Court can make the necessary inferences

to clear Rule 12's low bar. An employee working for an employer who controls his wages supports an inference of at least an implied agreement for those wages. As is the case with many of Plaintiffs' claims, discovery may elucidate facts that show there was no agreement between Robinson and Defendants (although that seems implausible). But for now, he has alleged the bare minimum for his claim to advance.

### E. It is premature to dismiss the collective or class action claims.

Courts only strike or dismiss class allegations in rare cases. *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011) ("[Only in a] rare few [cases does] the complaint itself demonstrate[] that the requirements for maintaining a class action cannot be met."), *overruled on other grounds*, 650 F.3d 311 (3d Cir. 2011) (*en banc*); *Jones v. SCO, Silver Care Operations LLC*, 2014 WL 5410627, at *4 (D.N.J. Oct. 23, 2014) (denying motion to dismiss FLSA collective action and related class action claims); *Naider v. A-1 Limousine, Inc.*, 2014 WL 5025921, at *2 (D.N.J. Oct. 8, 2014) (same); *Melecio v. Neshaminy SW, LLC*, 2025 WL 1186853, at *2 (E.D. Pa. Apr. 23, 2025) ("The Defendants have not presented nor has the Court located a single case where conditional certification [of an FLSA collective] was determined at the motion to dismiss stage."). Such rare cases are those where "[n]o amount of additional class discovery will alter th[e] conclusion that the class is not maintainable." *Bombin v. S.W. Airlines Co.*, 529 F. Supp. 3d 411, 422–23 (E.D. Pa. 2021) (internal citations and quotation marks omitted). This is not one of the rare cases where the allegations are ***so*** far-fetched a class could never pass Rule 23 muster.

Named Plaintiffs describe a potential collective of current or former employees at Defendants' manufacturing locations in Pennsylvania, Illinois, and Connecticut who, like Named Plaintiffs, (1) "worked on the production floor and are involved in the production and manufacturing of food products"; (2) typically worked forty hours or more a week; (3) additionally spent uncompensated time donning and doffing PPE and traveling to their workstations; and (4) suffered the same rounding policies as Named Plaintiffs. [Docket No. 45 ¶¶ 41, 43, 57–58, 75.] Courts have found similar allegations sufficient at the conditional certification stage; thus, they are sufficient at the pleading stage too. *See, e.g.*, *Jones*, 2014 WL 5410627, at *4 ("Because the Court has found that the named plaintiffs' allegations are sufficient, and plaintiffs have alleged that over forty other similarly situated employees of defendant have the same claims, plaintiffs' collective and class action claims cannot be dismissed at this stage."); *Felix de Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (holding allegations that employees were (1) all production employees, and (2) the employer failed to pay these employees minimum wage and overtime wages, were sufficient to establish that the employees were similarly situated for the purpose of FLSA).

The same is true of Plaintiffs' class claims. Plaintiffs allege three separate classes: a Pennsylvania class represented by Humphrey, an Illinois class represented by Terrell, and a Connecticut class represented by Robinson. [Docket No. 45 ¶¶ 78–80.] Each class alleges it will be composed only of residents of the same state alleging the same claims. At the pleading stage, that is sufficient. Defendants raise no

hurdles—such as standing—that imply Plaintiffs cannot meet Rule 23's strictures in the future after discovery. Defendants' motion to dismiss the collective and class allegations is denied.

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**. An accompanying order shall follow.

September 30, 2026
Date

**/s/ Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge